CULPEPPER, Judge. •
This is a suit for damages for personal injuries. Plaintiff was engaged in the demolition of a building when a brick column fell and broke his right leg below the knee. Defendant is the insurer of the winch truck operator whose negligence is alleged to have caused the column to fall. From a judgment awarding plaintiff the policy limits of $10,000, defendant appealed.
The substantial issues are: (1) Was the winch truck operator negligent? (2) Was the plaintiff contributorily negligent and/or did he assume the risk of the injuries received?
The facts show that the plaintiff had entered into an agreement with J. O. Theriot to dismantle a building formerly used as a funeral home. Plaintiff agreed to furnish the labor and equipment necessary and he received one-half of the lumber, bricks and other materials salvaged. The structure had a brick chain-wall which included columns approximately two feet square and five or six feet in height. Plaintiff made an agreement with Harry Judwin to dismantle the brick portions of the building and pay plaintiff three cents per brick salvaged. As part of this agreement, Judwin also agreed to remove all bricks and debris from the premises. The final items to be cleared away were the brick columns.
Judwin sent his winch truck, insured by the defendant, to remove the columns. The truck was driven by Judwin’s employee, Albert Batiste. Plaintiff had made arrangements with a friend, Rayfield Bargeman, to haul the columns off in his dump truck. Bargeman was to receive two of the columns.
On the day in question, March 29, 1969, the winch truck arrived at the premises first. Batiste hooked the cable to a column, lifted it from the ground and had it suspended with the A-frame when Bargeman arrived with his dump truck. They then maneuvered their vehicles and loaded the first column on the dump truck.
Batiste then backed his winch truck up to the next column. He stayed in the truck while the second column was being hooked to the cable. Batiste’s version of the accident is that he thought both plaintiff and Bargeman hooked the cable to the column. He says he looked in his rear-view mirror and saw Bargeman step back from the column and give a signal to start the winch. Batiste then placed the winch in operation to take up slack and the tension became so heavy that the front of the truck raised up. Suddenly the column broke at a point where the cable was around the column near ground level. Batiste then got out of the truck and discovered that the column had fallen on plaintiff’s leg. He concedes that he did not see plaintiff while he was operating the winch and did not know where plaintiff was or what he was doing at the time the column broke.
*115 The plaintiff testified that he alone hooked the cable to the column and “the minute I hooked it, all I know I got a lick.” Plaintiff says he is familiar with the operation of winch trucks and his understanding is that the operator of the winch waits for a signal from the one who attaches the cable. Bishop testified he gave no such signal. Essentially, Bishop’s version of the accident is that Batiste started the winch too quick and did not give plaintiff time to move to a safe position.
Bargeman corroborates plaintiff. He testified that while plaintiff was hooking the cable to the column, he was standing about six feet from the back of the truck. When Batiste took up the slack and began to apply tension, Bargeman was afraid the cable was going to break, so he stepped back about six more feet. However, Bargeman says the whole thing happened quickly and that the moment the slack was taken up and tension applied the column broke. Bargeman denies giving any signal to Batiste to start the winch. Also, Bargeman says he did not see plaintiff and did not know what he was doing just before the column broke.
In a well considered written opinion the trial judge discussed the testimony of these three witnesses and reached the following conclusions which are amply supported by the evidence:
“Bishop was a very impressive witness. This Court is impressed with his version of the occurrence of this accident. The driver of the truck admitted that he was not looking toward the column, could not see Bishop, did not ascertain the location of Bishop who was tying on to the column. He assumed that when Bargeman backed away from the back of the truck that it was time for him to tighten up on the winch line. This driver was under the duty to ascertain the position of Bishop before he started up with the winch line. Batiste knew that Bishop was tying on to the column. Such conduct is negligent and the negligence of Batiste is the proximate cause of the injury to Bishop.”
Defendant’s principal argument is that plaintiff had plenty of time, after hooking the cable, to move to a position of safety, and that he did not do so. Hence, defendant contends plaintiff is contributorily negligent and/or assumed the risk. Laney v. Stubbs, 217 So.2d 468 (La.App. 1st Cir. 1968). This argument is based largely on the testimony of Bargeman that it was from one to three minutes from the time the slack was taken up until the time the column broke and that Bargeman had time to move another six feet from the truck. Also, Batiste testified it was about four minutes from the time the cable became tense until the time the column broke.
In answer to this argument, the trial judge points out that neither Batiste nor Bargeman saw plaintiff or knew what he was doing just before the column broke. Hence, their time estimates have little value. The trial judge accepted the testimony of plaintiff that the instant he completed hooking the cable, the column fell before he had time to get out of the way. We find no manifest error in this finding of fact by the trial judge.
It is our conclusion that the accident was caused solely by the negligence of the winch truck operator and that plaintiff was not contributorily negligent and did not assume the risk.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.